1
2
3
4                                                    **E-FILED on** ___11/8/05___
5
6
7
8                    IN THE UNITED STATES DISTRICT COURT
9                 FOR THE NORTHERN DISTRICT OF CALIFORNIA
10                              SAN JOSE DIVISION
11

12   SUSANNE M. PALMER,                    No. C-04-03237 RMW

13            Plaintiff,                   ORDER ON CROSS-MOTIONS FOR
                                           SUMMARY JUDGMENT
14       v.
                                           **[Re Docket Nos. 55, 75]**
15   I.C. SYSTEMS, INC.; and B. BROWN.,

16            Defendant.

17

18         Defendant I.C. System, Inc. ("ICS") moves for summary judgment on all claims asserted by

19   plaintiff.  Plaintiff Suzanne Palmer moves for partial summary judgment that ICS is liable under the Fair

20   Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, under sections 1692e(2) and (10),

21   and 1692f(1), for both attempting to collect unauthorized amounts and threatening to sue on a time-barred

22   debt, and under section 1692e(8) for failing to report her debt as disputed.  For the following reasons, the

23   court grants plaintiff's motion to the extent of adjudicating that defendant did not timely report plaintiff's

24   alleged debt as disputed.  The court grants defendant's motion for summary adjudication that it is not liable

25   under 15 U.S.C. §§ 1692e(2), (10) or 1692f(1) for attempting to collect amounts assigned to it by CDC.

26   Both motions are otherwise denied.

27

28

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT—C-04-03237 RMW
MAG/JAH

# I. BACKGROUND

The facts of this case are largely undisputed.  Defendant ICS is a debt collector.  It attempted to collect $1,440.00 from plaintiff Susanne Palmer, a consumer as defined by the FDCPA, on behalf of the original creditor, Child Development Center ("CDC").  What the parties dispute is whether ICS is liable for violating the FDCPA based upon its collection efforts.

In 2002, Palmer enrolled her son in a CDC center in San Jose, California.  Palmer signed the CDI/CDC Summer Registration Agreement, in which she acknowledged that she received a copy of the Parent Handbook.  Supp. Decl. of Andrew Steinheimer Opp. Plf.'s Mot. Summ. J., Ex.  T ¶ 27.  The Parent Handbook includes a section entitled "Returned Checks".  This section provides:

> Checks returned from the bank will be subject to a $20.00 service charge.
> If a check is returned, you will be notified by phone and/or mail, and will be
> expected to write a new check with the service charge added before the
> child attends the following week.

*Id.* Ex. U at 19.  Palmer wrote three checks to CDC for tuition, dated August 9, August 16, and September 16, 2002.  These checks were dishonored for insufficient funds upon presentment.  CDC sent at least two letters, dated September 4 and October 2, 2002,  to Palmer.  These letters indicated that she was liable for treble damages and a $20.00 service charge under California Civil Code § 1719.

On January 21, 2003, CDC referred Palmer's debt to ICS for collection.  CDC calculated the debt as $575.00 in principal and $865.00 in various check charges.[1]  Decl. of Andrew Steinheimer Supp. Def. Mot. Summ. J., Ex. D.  CDC assigned the total amount of the debt, $1440.00, to ICS for collection.  Decl. of Sue Johnson Supp. Def Mot. Summ. J. ("Johnson Decl.") ¶ 4.  ICS did not add any amount to the debt assigned, but proceeded to attempt to collect the $1440.00 from Palmer.

ICS sent two letters, the first dated April 24, 2003, and the second dated November 26, 2003, stating that Palmer owed $575.00 in principal and $865.00 in "additional client" charges, for a total of $1,440.00.  Compl. ¶¶ 9-10, Exs. 1, 2.  The November 26, 2003, letter was ICS's last collection attempt.  Johnson Decl. ¶¶ 7, 8.

---

[1]     The three checks were in the amounts of $185, $185, and $90.  This is a total principal amount of $460.  It is unclear from where the additional principal amount comes.  Plf. Mot. Summ. Adj. at 5 n.12.  The $865 of additional charges were calculated based on two of the three checks: one for $185 and the other for $90.  CDC trebled the amount of each check and added a $20 service charge for each.

1    On March 8, 2003, ICS began reporting this amount owed to TransUnion and Experian credit

2    reporting agencies.  ICS reports debts on a weekly basis, reporting old information along with new

3    information for that week.  ICS Depo. at 75:22-76:20.  On June 30, 2004, Palmer called to ask about the

4    additional charges that ICS was seeking but the ICS representative was unwilling or unable to provide her

5    with information about those service charges.  She called again on July 2 and 21, 2004.  Decl. of Susanne

6    Palmer Re: Cross Mot. Summ. J. ("Palmer Decl.") ¶ 4;[2] Johnson Decl. ¶¶ 9-10; *see also* Decl. of Tammy

7    Gulla Re: Cross Mot. Summ. J. ¶¶ 2-3 (stating that plaintiff's counsel's paralegal called on July 21, 2004,

8    and was told only that CDC turned over $575 in principal amount and $865 in bad check charges).

9    Plaintiff filed a complaint on August 10, 2004, asserting that defendants violated the FDCPA by

10    seeking to collect charges not expressly agreed upon or permitted by law (15 U.S.C. §§ 1692f(1),

11    1692e(2)(A)); falsely representing the character, amount or legal status of the debt (§ 1692e(2)(A));

12    communicating or threatening to communicate credit information known to be false (§ 1692e(8)); and using

13    false representations or deceptive means to collect or attempt to collect the debt (§ 1692e(10)).  Compl. ¶

14    28.  The complaint further alleges that ICS violated California's UCL, Cal. Bus. & Prof. Code §§ 17200 *et*

15    *seq.*, because ICS's conduct was likely to deceive consumers as to their legal rights and obligations

16    concerning how debts can be collected.  Compl. ¶ 33.

17                                           **II.  ANALYSIS**

18    Defendant moves for summary judgment that plaintiff's claims under California's UCL fail for lack of

19    standing.  Defendant also seeks summary judgment on the ground that it did not add any charges to the

20    debt it attempted to collect from plaintiff and  thus did not violate the FDCPA.  Plaintiff seeks partial

21    summary judgment that ICS violated the FDCPA by (1) attempting to collect check charges that were not

22    permitted by law or expressly authorized by the agreement creating the debt, (2) threatening to sue on a

23    time-barred debt, and (3) failing to report Palmer's debt as disputed.

24    Defendant premises its motion on two main arguments: (1) that plaintiff does not have standing

25    under California's UCL and (2) that it is entitled under the FDCPA to rely upon the information supplied by

26    the original creditor absent dispute by the plaintiff.  As set forth in this court's Order Clarifying December

27

28        [2]    Palmer's declaration actually states that she called ICS on June 30, 2005.  Because this appears to be an error, the court will presume she meant to state that she called on June 30, 2004.

14, 2004, Order Granting in Part and Denying in Part Motion to Dismiss; Order Granting Defendants'
Motion for Reconsideration (dated November 7, 2005), the court has dismissed plaintiff's UCL claim
because she lacks standing under the UCL as revised by Proposition 64. Thus, the court will concentrate
its analysis of the present cross-motions for summary judgment on the parties' disputes under the FDCPA.[3]

### A.    Defendant's Objection to Plaintiff's Motion for Partial Summary Judgment

As a threshold issue, defendant objects to plaintiff's second and third grounds for her motion for
summary judgment because it contends that plaintiff did not plead these as bases for her FDCPA claims in
the complaint. Defendant argues that plaintiff's claims, while asserted under different sections of the
FDCPA, are nonetheless premised solely upon ICS having attempted to collect improper charges.
Permitting plaintiff to amend her complaint by way of the present summary judgment motion, defendant
argues, is procedurally improper and unfair to defendants.

The court agrees that plaintiff has failed to allege that defendant threatened suit on a time-barred
debt and that it would be unfair to permit plaintiff to amend her complaint by way of her cross-motion for
summary judgment. While, as plaintiff points out, Federal Rule of Civil Procedure 8 requires only notice
pleading, plaintiff did not allege facts in her complaint that would have supported this claim.[4] Defendant has
not been given sufficient notice of this claim to permit it adequate opportunity to conduct discovery into its
merits.

However, the court finds that plaintiff has adequately pled her claim that defendant reported or
threatened to report credit information to reporting agencies that defendant knew or should have known
was false in violation of 15 U.S.C. § 1692e(8). In her complaint, plaintiff set forth that defendant reported
to TransUnion and Experian that she owed a debt of $1440.00 to CDC. Compl. ¶¶ 12-13. She also
stated that it is ICS's practice or policy to communicate or threaten to communicate credit information to

---

[3]    Plaintiff moves to strike defendant's opposition to her motion for summary judgment,
supporting declarations, and request for judicial notice as late. Defendant's opposition was due on or
before July 8, 2004, but was not filed until July 11, 2004. This is the second such motion filed in this case
for defendant's failure to file according to the briefing schedule. The court will consider defendant's
opposition as it does not appear to have resulted in prejudice to plaintiff, but reminds defendant's counsel to
adhere to the briefing schedules unless the parties have stipulated to (and the court has approved) extending
the deadlines. Defendant's counsel should note that further tardy filings may not be considered by the court.

[4]    While plaintiff argues that the attachment of the offending letters from ICS provided
sufficient facts, the court disagrees. There are no facts in those letters that suggest that the debt was time
barred, nor is there any indication that plaintiff intended to assert such a claim.

1  credit reporting agencies that defendants know or should know is false. *Id.* ¶ 17. Thus, plaintiff has alleged

2  sufficient facts in her complaint to support the third claim upon which she seeks summary judgment.

3        Thus, while plaintiff's second ground for summary adjudication is not at issue in this case, the court

4  finds that plaintiff has sufficiently alleged her third ground in her complaint and will consider it for purposes

5  of plaintiff's motion for partial summary judgment.

6        **B.      The Debt Assigned to ICS**

7        Debt is defined under the FDCPA as "any obligation or alleged obligation of a consumer to pay

8  money arising out of a transaction in which the money, property, insurance, or services which are the

9  subject of the transaction are primarily for personal, family, or household purposes." 15 U.S.C. §

10  1692a(5). The subject of the transaction here is not in dispute: Palmer wrote the checks at issue to pay for

11  tuition for her son, engaging in a transaction that resulted in a debt for which collection is governed by the

12  FDCPA. Here, the debt assigned to ICS from CDC included: (1) the principal amount of $460.00 for the

13  aggregated amount of the face value of the three bad checks, which amount appears to have been

14  miscalculated by CDC as $585.00; (2) a contractual check charge of $20 for two of the bad checks; and

15  (3) treble the face value amount of two of the checks, which were for $90 and $185. The contractual

16  check charge and the treble damages are, like the principal amount, "obligations . . . to pay money arising

17  out of a [consumer] transaction.*" Cf. Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark,*

18  *L.L.C.*, 214 F.3d 872, 875 (7th Cir. 2000) ("The unpaid principal balance is not the debt; it is only a part

19  of the debt; the [FDCPA] requires statement of the debt."). The parties do not dispute that CDC, not ICS,

20  calculated and assessed these charges. They also do not dispute that CDC itself attempted to collect both

21  the principal debt and additional damages before assigning the debt to ICS.[5]

22        Here, it is clear that the defendant received a debt assigned from a creditor and that debt included

23  contractual and statutory damages. The parties dispute whether a defendant attempting to collect such a

24  debt violates the FDCPA's unfair practices provision under 15 U.S.C. § 1692f(1), which prohibits the

25  collection of "any amount unless such amount is expressly authorized by the agreement creating the debt or

26  permitted by law," or otherwise constitutes a false or misleading representation under 15 U.S.C. § 1692e.

27

28        [5]      In fact, alleged imperfections in CDC's debts feature prominently in plaintiff's motion for summary judgment.

**C.     15 U.S.C. § 1692g**

ICS contends that the sole basis of Palmer's FDCPA allegations is that ICS attempted to collect an invalid debt amount.  Because her causes of action are, according to ICS, based only on an incorrect amount, ICS asserts that she was obligated to first utilize the debt validation procedure defined by 15 U.S.C. § 1692g.  Specifically, ICS asserts that Palmer's failure to dispute the debt in writing within 30 days bars her from now bringing suit based on ICS's attempt to collect that amount.

ICS points out that Palmer did not make any attempt to dispute the debt at any time while it was actively seeking to collect the debt.  It is undisputed that ICS sent letters to Palmer seeking to collect the $1440.00 total debt, and that its last collection attempt was a letter dated November 23, 2003.  It is also undisputed that Palmer's first contact with ICS did not occur until June 30, 2004.  Johnson Decl. ¶ 9; Palmer Decl. ¶ 4.  In plaintiff's contacts with ICS, she asked about the basis of the client charges set forth in the collection letter (although defendant asserts she did not deny or expressly contest the amount).  Soon after initiating contact with ICS, she filed suit.

Title 15 U.S.C. § 1692g provides a mechanism by which consumers may validate the debt asserted by the debt collector.  Subsection (a) sets forth in detail the notice that debt collectors must give to the consumer regarding her right to validation of a debt.  Subsection (b) sets forth the requirement that, should the consumer dispute the debt in writing within 30 days of the initial communication or request the name and address of the original creditor, the debt collector must cease collection of the debt or any disputed amount. Defendant contends that a plaintiff who seeks to sue under the FDCPA alleging only the validity of the debt as the basis for the FDCPA violations must first take advantage of the debt validation procedure set forth in 15 U.S.C. § 1692g.  At least one district court has recently agreed with this view:

> In sum, the court holds that where a debt collector has included appropriate language regarding the FDCPA debt validation procedure, the allegation that the debt is invalid, standing alone, cannot form the basis of a lawsuit alleging fraudulent or deceptive practices in connection with the collection of a debt.  Likewise, a consumer alleging that a debt referenced in a collection letter is not valid, is required to follow the clear and orderly procedure set forth in the FDCPA. Such a consumer may not institute an immediate lawsuit alleging that the letter violates the FDCPA.  To allow such lawsuits would discourage use of the detailed statutory procedure. Instead, individuals would be encouraged to resort to litigation (and the prospect of an attorney's fee award) instead of being encouraged to communicate directly with the debt collector to expeditiously resolve their claim.

1   *Bleich v. The Revenue Maximization Group*, 233 F. Supp. 2d 496, 501 (E.D.N.Y. 2002).

2          Section 1692g(b), however, does not set forth a mandatory procedure as a prerequisite to filing a

3   suit alleging that a debt collector sought to collect an invalid debt.  A plaintiff need not dispute a debt in

4   writing for that dispute to be governed by the FDCPA.  For example, while it is clear that subsection (b)

5   requires the consumer to notify the debt collector in writing within thirty days that she disputes the debt or

6   requests the name of the original creditor, thereby triggering the debt collector's obligation to provide

7   verification of the debt and cease collection efforts, the same notice in writing requirement does not appear

8   in subsection (a)(3).  *Compare* 15 U.S.C. § 1692g(a)(3) *with*  § 1692g(b); *see also In re Sanchez*, 173

9   F. Supp. 2d 1029, 2033-35 (N.D. Cal. 2001).  Other subsections of section 1692g also require a

10  consumer to submit a writing, which triggers additional duties on the part of the debt collector.  *See*, *e.g.*,

11  15 U.S.C. § 1692g(a)(4)-(5).

12         Nevertheless, subsection (a), which sets forth the validation notice that debt collectors are required

13  to provide either in the first communication with the consumer or within 5 days after initial contact, states

14  that the debt collector must notify the consumer "that unless the consumer, within thirty days after receipt of

15  the notice, disputes the validity of the debt, or any portion thereof, *the debt will be assumed to be valid*

16  *by the debt collector*."  *Id.* § 1692g(a)(3) (emphasis added).  This demonstrates that, absent a dispute, the

17  debt collector is allowed to assume the debt is valid.  While this subsection does not create a standing

18  requirement that consumers dispute the debt in writing or otherwise within thirty days, where, as here, it is

19  undisputed that the consumer never contacted the collector to contest the debt before the final collection

20  attempt, plaintiff cannot assert a cause of action under the FDCPA solely based upon the debt collector's

21  attempt to collect an invalid debt.

22         **D.      Violations of 15 U.S.C. §§ 1692e and 1692f**

23         As set forth above, it is undisputed that defendant did not add any charges to the debt assigned to it

24  by CDC.  Nevertheless, plaintiff asserts that defendant is strictly liable for attempting to collect unlawful

25  charges assigned by CDC.

26         Title 15 U.S.C. § 1692e prohibits "false, deceptive or misleading" collection activities.  Specifically,

27  plaintiff complains that defendant has falsely represented "the character, amount, or legal status of

28  (plaintiff's) debt" in violation of § 1692e(2)(A) and has used a "false representation or deceptive means to

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT—C-04-03237 RMW
MAG/JAH                                        7

1  collect or attempt to collect (plaintiff's) debt" in violation of 15 U.S.C. § 1692e(10).  Here, the false

2  representation plaintiff alleges involves the misrepresentation of the amount of the debt.

3        The provisions of § 1692e may apply "even when a false representation was unintentional."

4  *Gearing v. Check Brokerage Corp.*, 233 F.3d 469, 472 (7th Cir. 2000) (citing *Russell v. Equifax*

5  *A.R.S.*, 74 F.3d 30, 33 (2d Cir. 1996)).  However, the court finds that ICS did not misrepresent the

6  amount it sought to collect.  As set forth above, ICS was assigned the full amount of the debt from CDC.

7  It sought to collect precisely the amount that was assigned to it and accurately represented that amount as

8  $575 in principal debt and $865 in additional client charges.  There was no misrepresentation of the amount

9  assigned to ICS.

10        Plaintiff's also alleges that ICS attempted to collect amounts not "expressly authorized by the

11  agreement creating the debt or permitted by law," in violation of 15 U.S.C. § 1692f(1).  Attempts to collect

12  this debt, according to plaintiff, resulted in a false or misleading representation as to the amount of the debt

13  under § 1692e(2)(A), and a use of such representation to attempt to collect a debt violates § 1692e(10).

14                    **1.    Vicarious Liability**

15        Plaintiff spends much of her motion for partial summary judgment discussing how CDC's letters to

16  plaintiff, sent before CDC assigned the debt to ICS, were insufficient to entitle ICS to treble damages under

17  Cal. Civ. Code § 1719.  She also contends that the bad check charges added by CDC, although

18  apparently not disputed as contractually authorized, are impermissible liquidated damages under Cal. Civ.

19  Code § 1671.  Plaintiff argues that deficiencies in CDC's contract and collections attempt support her

20  contention that ICS attempted to collect unauthorized amounts in violation of 15 U.S.C. § 1692f(1).

21        However, a plaintiff cannot sue an original creditor, such as CDC, under the FDCPA.  *Schlosser*

22  *v. Fairbanks*, 323 F.3d 534, 536 (7th Cir. 2003).  Further, debt collectors are not vicariously liable for

23  the actions of their clients.  The FDCPA was designed to protect consumers from unscrupulous practices of

24  debt collectors.  *See* 15 U.S.C. § 1692(a).  Therefore, the focus of the court's inquiry should be on the

25  debt collector's conduct.  The Ninth Circuit recognized this focus in *Baker v. G.C. Services Corp.* when it

26  stated "the [FDCPA] is designed to protect consumers who have been victimized by unscrupulous debt

27  collectors, regardless of whether a valid debt actually exists."  677 F.2d 775, 777 n.4 (1982).  ICS

28

attempted to collect the amount assigned to it by CDC.  It did nothing to add any allegedly unauthorized

charges to the amount it sought to collect.  ICS cannot be held vicariously liable for CDC's alleged failures.

### 2.    ICS's Duty to Validate the Debt Assigned from Client

Although Palmer did nothing to dispute the debt during the time ICS sought to collect the amount

assigned by CDC, plaintiff nonetheless asserts that a defendant may be held liable because it had a duty to

ensure that the bad check charges that CDC included in the amount it assigned were authorized either by

contract or by state law.  For purposes of assessing plaintiff's claims, the court assumes, without deciding,

that plaintiff is correct that CDC is not entitled to treble damages because of faulty wording in its pre-

assignment collection letters and that the agreement does not actually authorize the $20 bad check charge

assessed by CDC.  Nevertheless, the court concludes that ICS is not liable for attempting to collect the

charges assessed by CDC.

Judge Frank H. Easterbrook in the Seventh Circuit opinion *Randolph v. IBMS, Inc.*, 368 F.3d

726 (2004), explained that 15 U.S.C. §§ 1692e and 1692f are strict liability provisions that are subject to

a due care defense.  He stated, "[a] debt collector's false statement is presumptively wrongful under the Fair

Debt Collection Practices Act, *see* 15 U.S.C. § 1692e(2)(A), even if the speaker is ignorant of the truth;

but a debt collector that exercises care to avoid making false statements has a defense under § 1692k(c)."

368 F.3d at 728; *see id.* at 733 ("[E]verything we have said about § 1692e(2)(A) applies equally to §

1692f."); *accord Turner v. J.V.D.B & Assocs.*, 330 F.3d 991, 996 (7th Cir. 2003) (stating in dictum that

"[t]he provision is silent as to the debt collector's intent, yet it is clear that a collector who collected a charge

unauthorized by the debt agreement or by law, even by accident, would violate § 1692f(1).").  Thus,

assuming that ICS attempted to collect amounts not authorized by the agreement that created the debt or

by state law, ICS can only avoid liability by establishing a defense under § 1692k(c).

Section 1692k(c) provides that a debt collector may not be held liable "if the debt collector shows

by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide

error notwithstanding the maintenance of procedures reasonably adapted to avoid such an error."  The

bona fide error exception is an affirmative defense, for which defendant bears the burden of proof at trial.

*Fox v. Citicorp Credit Servs.*, 15 F.3d 1507, 1514 (9th Cir. 1994).  To qualify for the bona fide error

exception, a debt collector must show that: (1) the FDCPA violation was not intentional; (2) the FDCPA

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT—C-04-03237 RMW
MAG/JAH                                                  9

1   violation resulted from a bona fide error; and (3) the debt collector maintained procedures reasonably

2   adapted to avoid any such error.  *Kort v. Diversified Collection Servs., Inc.*, 394 F.3d 530, 537 (7th

3   Cir. 2005).

4          It is undisputed that ICS's violation of the FDCPA was unintentional.  Plaintiff, however, argues that

5   Ninth Circuit precedent prevents defendant from demonstrating that the violation resulted from a bona fide

6   error because the error is not purely clerical.  It cites *Baker* for the proposition that the bona fide error

7   defense only applies to clerical errors.

8          This is not the precise the holding of *Baker*.  The Ninth Circuit compared the bona fide error

9   defense in the FDCPA with a similarly-named defense provided in the Truth In Lending Act ("TILA").

10  *Baker*, 677 F.2d at 779.  The court noted that the TILA bona fide error defense only excuses errors of a

11  clerical nature, then goes on to conclude that the FDCPA bona fide error defense does not apply to errors

12  of law.  *Id.* ("Reliance on advice of counsel or a mistake about the law is insufficient by itself to raise the

13  bona fide error defense.").

14         Here, CDC may have introduced an error by assigning an erroneous principal amount or invalid

15  client charges.  This is a factual error;  ICS itself did not make, nor does it assert, that it made an error of

16  law.  ICS made no legal determination as to the validity of the debt, nor did it assess any charges.  Thus,

17  *Baker* is not directly applicable.

18         The court must next determine whether ICS maintained procedures reasonably calculated to avoid

19  the error that CDC allegedly introduced.  Defendant offers the client agreement between CDC and ICS to

20  show its procedures are reasonably calculated to avoid error:

21             Client agrees to submit only amounts that are <u>validly due and owing</u> by the
               debtor indicated.  This applies to the principal, any charges added to the
22             principal by the Client and any rate of interest specified by Client for I.C. to
               accrue on an on-going basis.  Client warrants that all information provided
23             on each account will be accurate.

24  Johnson Decl., Ex. P ¶ 1.  Furthermore, the debt entry screens remind the client to enter in only valid

25  additional charges.  The fields are labeled, for example, "Principal Amount Due", "Valid Collection Charge"

26

27

28

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT—C-04-03237 RMW
MAG/JAH                                    10

1    (with a warning that such charges are not permitted in California), and "Valid Bad Check Charge." *Id.*, Ex.

2    R at 2.[6]

3         Plaintiff, in response, provides a list of procedures ICS lacks that could have prevented the

4    assessment of charges other than those expressly provided for in the agreement or by law, even absent a

5    dispute by the consumer.  She suggests that ICS could have, but did not, require CDC to submit a copy of

6    the contractual agreement that provided for the $20 bad check fee.  She further suggests that ICS could

7    have, but did not, require CDC to provide copies of the alleged bad checks to ICS or that ICS could have

8    required CDC to provide the check number, date of the check, amount of the check and date collection

9    attempts by CDC occurred for each bad check debt it submitted to ICS.  She also accuses ICS of not

10   holding regular meetings with CDC to discuss collections, not explaining to its clients what constitutes a due

11   and validly-owed debt, and not being able to identify anyone whose responsibility it is to know what lawful

12   charges may be added by California creditors to bad checks.

13        As Judge Easterbrook aptly explained:

14        Courts do not impute to debt collectors other information that may be in creditors'
          files—for example, that debt has been paid or was bogus to start with.  2This is why debt
15        collectors send out notices informing debtors of their entitlement to require verification and
          to contest claims.  15 U.S.C. § 1692g. . . . The due-care defense of § 1692k(c) also
16        would be pointless if creditors' knowledge were imputed to debt collectors.

17   *Randolph*, 368 F.3d at 729.  Courts considering the bona fide error defense have generally held that "[t]he

18   FDCPA does not require an independent investigation of the information provided by clients when a debt

19   collector tries to collect a debt, nor does it require the debt collector to dispute the creditor's construction

20   of a contract."  *Ducrest v. Alco Collections*, 931 F. Supp. 459, 462 (M.D. La. 1996); *see also Smith v.*

21   *Transworld Sys., Inc.*, 953 F.2d 1025, 1032 (6th Cir. 1992) (tatute does not require an independent

22   investigation of the debt referred for collection; instead, the FDCPA requires the maintenance of

23   procedures reasonably adapted to avoid any such error.).

24        The procedures plaintiff suggests would amount to requiring debt collectors to verify, validate, and

25   make independent legal assessments of debts before attempting to collect on them.  There is out-of-circuit

26   _____

27        [6]    ICS also points out a number of other procedural safeguards, such as a detailed training
     regimen and periodic education and testing of its employees about the FDCPA.  Def.'s Opp'n Plf.'s Mot.
28   Summ. J. at 13.  These procedures do not address the error asserted, namely the transmission of allegedly
     erroneous bad check charges.

1   case law declining to impose a duty on the debt collector to independently investigate information passed on

2   by the client or generally question its legal determinations, and such a duty is neither expressly nor impliedly

3   present in the FDCPA.  Defendant has presented undisputed evidence that its procedures are reasonably

4   designed to prevent clients from submitting invalid bad check charges.

5       ICS has successfully established the bona fide error defense as to plaintiff's allegations under 15

6   U.S.C. §§ 1692e and 1692f, particularly because plaintiff did not dispute the debt while collection was in

7   progress.  ICS does not appear to have intentionally attempted to collect allegedly unauthorized charges,

8   the error was factual rather than legal, and the procedures adopted appear to be reasonably designed to

9   avoid collecting invalid amounts, especially considering that the FDCPA does not require debt collectors to

10  independently investigate the information submitted by their clients.  Therefore, and particularly because

11  plaintiff did not contest the amount or validity of the debt owed while collection efforts were ongoing, her

12  claims based on defendant's attempts to collect allegedly unauthorized amounts are dismissed.

13      **E.    15 U.S.C. § 1692e(8)**

14      Plaintiff also asserts the defendant separately violated the FDCPA by its failure to communicate that

15  the debt was disputed.  As set forth in Part II.A, above, defendant failed to specifically respond to this

16  argument, instead contending that plaintiff had not pleaded an FDCPA violation for failing to communicate a

17  disputed debt.  It is undisputed that defendant did report the debt to the TransUnion and Experian credit

18  reporting agencies beginning March 8, 2003.  ICS Depo. at 43:6-22.  Defendant also acknowledges that it

19  updates its reports and transmits them to credit reporting agencies on a weekly basis.  *Id.* at 84:24-85:5.

20  Although plaintiff contacted ICS about the debt starting in June and July 2004, ICS depo., pp.56:22-57:3,

21  72:18-25 (Plaintiff stated "I don't think I owe these additional charges" and "I don't think I should have to

22  pay these additional charges."), ICS did not withdraw the credit report until August 21, 2004  *Id.* at 75:22-

23  76:20.  The ICS computer did not, until September 9, 2004, show Palmer's debt as disputed.  ICS depo.

24  at 90:16-19.  ICS's failure to report Ms. Palmer's alleged debt as disputed for several seeks violates

25  15 U.S.C. § 1692e(8).  *See  Brady v. Credit Recovery Co.*, *Inc.,* 160 F.3d 64, 65 (1st Cir. 1998)

26  (Section 1692(e)(8) requires debt collector who knows or should know that a given debt is disputed to

27  disclose its disputed status does not impose a writing requirement on consumers who wish to dispute a

28  debt.).

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT—C-04-03237 RMW
MAG/JAH                                                    12

1    The court concludes that a dispute need not be in writing to be recognized as a disputed debt under

2  the FDCPA.  While defendant submits a declaration stating that Palmer did not dispute the fact that she

3  owed the debt, the undisputed facts nevertheless establish that she inquired about the basis for the

4  additional client charges, thereby disputing that she owed the amount sought. Because defendant has failed

5  to provide evidence that it reported this dispute that the report only continued to be submitted to credit

6  agencies due to bona fide error, the court grants plaintiff's motion for summary judgment as to her claim that

7  ICS violated 15 U.S.C. § 1692e(8) by failing to report a disputed debt as disputed.

8                                                    **III.  ORDER**

9            For the foregoing reasons, the court grants

10      1.      defendant's motion for summary judgment that it is not liable under 15 U.S.C. §§ 1692e(2),

11              (10) or 1692f(1) for attempting to collect amounts assigned to it by CDC.

12      2.      plaintiff's motion for summary judgment that defendant is liable under 15 U.S.C. § 1692e(8)

13              for failing to timely report a disputed debt as disputed.

14  Plaintiff's motion is denied on the other two grounds upon which she seeks summary judgment.

17  DATED:      11/8/05                              /s/ Ronald M. Whyte
                                                    RONALD M. WHYTE
18                                                  United States District Judge

1    **Notice of this document has been electronically sent to:**

2    **Counsel for Plaintiff(s):**

3    Ronald Wilcox          ronaldwilcox@post.harvard.edu
        O. Randolph Bragg     rand@horwitzlaw.com

4    Paul Arons            lopa@rockisland.com

5    **Counsel for Defendant(s):**

6    Andrew Steinheimer    asteinheimer@mpbf.com
        Mark Ellis            mellis@mpbf.com

7

8    Counsel are responsible for distributing copies of this document to co-counsel that have not registered for
        e-filing under the court's CM/ECF program.

9

10

11

   **Dated:**         11/8/05                     /s/ JH

12                                            **Chambers of Judge Whyte**

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28