**E-FILED on**    6/7/07

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SUSANNE M. PALMER,<br><br>      Plaintiff,<br><br>    v.<br><br>I.C. SYSTEMS, INC.; and B. BROWN.,<br><br>      Defendant. | No. C-04-03237 RMW<br><br>ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT<br><br>**[Re Docket Nos. 164, 171]** |

      Defendant I.C. System, Inc. ("ICS") moves for summary judgment on all claims asserted by plaintiff. Plaintiff Suzanne Palmer moves for partial summary judgment that ICS is liable under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, under sections 1692e and 1692f, for threatening to sue on a time-barred debt, and under section 1692e(8) for failing to report her debt as disputed. For the following reasons, the court grants defendant's motion for summary adjudication that it is not liable under 15 U.S.C. §§ 1692e and 1692f for threatening suit on a time-barred debt and denies plaintiff's motion on both grounds.

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT—C-04-03237 RMW
MAG

# I. BACKGROUND[1]

The facts of this case are largely undisputed. Defendant ICS is a debt collector. It attempted to collect $1,440.00 from plaintiff Susanne Palmer, a consumer as defined by the FDCPA, on behalf of the original creditor, Child Development Center ("CDC"). What the parties dispute is whether ICS is liable for violating the FDCPA based upon its collection efforts.

In 2002, Palmer enrolled her son in a CDC center in San Jose, California. Palmer signed the CDI/CDC Summer Registration Agreement, in which she acknowledged that she received a copy of the Parent Handbook.[2] Palmer wrote three checks to CDC for tuition, dated August 9, August 16, and September 16, 2002. The three checks were in the amounts of $185, $185, and $90. These checks were dishonored for insufficient funds upon presentment. CDC sent at least two letters, dated September 4 and October 2, 2002, to Palmer. These letters indicated that she was liable for treble damages and a $20.00 service charge under California Civil Code § 1719. Decl. of Paul Arons Supp. Plf.'s Mot. Summ. J. ("Arons Decl."), Exs. 6 & 7.

On January 21, 2003, CDC referred Palmer's debt to ICS for collection. Decl. of Sue Johnson Supp. Def.'s Mot. Summ. J. ("Johnson Decl.") ¶ 12. CDC calculated the debt as $575.00 in principal and $865.00 in various bad check charges. CDC assigned the total amount of the debt, $1440.00, to ICS for collection. Arons Decl., Ex. 4. ICS did not add any amount to the debt assigned, but proceeded to attempt to collect the $1440.00 from Palmer. Johnson Decl. ¶ 12.

Between January 23, 2003 and November 26, 2003, ICS sent Palmer five collection letters. *Id.*; *see also id.*, Ex. 1; Arons Decl., Exs. 4 & 5. The November 26, 2003 letter was ICS's last collection attempt. Johnson Decl. ¶ 13. The November 26 letter reads in relevant part:

> YOU HAVE LEFT OUR OFFICE NO OTHER CHOICE BUT TO RECOMMEND TO OUR CLIENT THAT THIS DEBT BE FORWARDED TO AN ATTORNEY IN YOUR AREA FOR THE PURPOSE OF FILING A LAWSUIT AGAINST YOU.

---

[1] The facts set forth herein are largely taken from the court's November 8, 2005 Order on Cross-Motions for Summary Judgment, Docket No. 121.

[2] Palmer points out that she does not recall whether she actually received a copy of the Parent Handbook while her son was enrolled at CDC. Decl. of Susanne Palmer Re: Cross Motions for Summ. J. ("Palmer Decl.") ¶ 2.

> We have forwarded the appropriate paperwork to Child Development Center in order that they may proceed with that filing if desired. You still have the option to avoid the possibility of a lawsuit if you PAY THIS DEBT NOW, or contact our office IMMEDIATELY to discuss payment.

Arons Decl., Ex. 5. The debt was forwarded to CDC, which opted not to take action against Palmer.

On March 8, 2003, ICS began reporting this amount owed to TransUnion and Experian credit reporting agencies. Appendix Supp. Plf.'s Mot. Summ. J., Dep. of I.C. System dated February 23, 2005 ("ICS Dep.") at 43:6-22. ICS reports debts on a weekly basis, reporting old information along with new information for that week. ICS Dep. at 84:24-85:5. On June 30, 2004, Palmer called to ask about the additional charges that ICS was seeking but the ICS representative was unwilling or unable to provide her with information about those service charges. She called again on July 21, 2004. Decl. of Susanne Palmer Re: Cross Mot. Summ. J. ("Palmer Decl.") ¶ 4;[3] Johnson Decl. ¶ 14; *see also* Decl. of Tammy Gulla Re: Cross Mot. Summ. J. ¶¶ 2-3 (stating that plaintiff's counsel's paralegal called on July 21, 2004, and was told only that CDC turned over $575 in principal amount and $865 in bad check charges). Plaintiff filed a complaint alleging violations of the FDCPA on August 10, 2004. ICS noted in its computer system that the lawsuit was received on August 17, 2004. ICS Dep. at 74:16-75:13.[4] The debt was reported as undisputed until August 21, 2004. ICS Dep. at 147:12-19. Palmer's debt was not marked as disputed in ICS's system until September 9, 2004. ICS Dep. at 90:16-19.

In an order dated November 8, 2005, the court granted summary judgment as to certain claims in plaintiff's original complaint. On January 13, 2006, plaintiff filed an amended complaint with the court's leave, asserting that defendants violated the FDCPA by falsely representing the

---

[3] Palmer's declaration, the identical declaration submitted in support of her original motion for summary judgment in June 2005, actually states that she called ICS on June 30, 2005. Because this appears to be an error, the court will once again presume she meant to state that she called on June 30, 2004.

[4] The question posed would seem to indicate that the lawsuit was received on July 17, 2004. However, from the questioning, it would appear that the deponent was responding to chronological entries. The previous entry was dated July 30 then the question turns to where the "July (sic) 17, 2004 entries begin." Based upon the pattern of questioning and the fact that the complaint was not filed until August 10, 2004, it is clear that the computer record indicates that the receipt of Palmer's lawsuit was noted in ICS's system on August 17, 2004.

character, amount or legal status of the debt (§ 1692e(2)(A)); communicating or threatening to communicate credit information known to be false (§ 1692e(8)); using false representations or deceptive means to collect or attempt to collect the debt (§ 1692e(10)); and threatening to sue on a time-barred debt.  1st Am. Compl. ¶ 30.

## II.  ANALYSIS

Plaintiff seeks partial summary judgment that ICS violated the FDCPA by (1) threatening to sue on a time-barred debt, and (2) failing to report plaintiff's debt as disputed.  Defendant moves for summary judgment that it did not threaten to sue on a time-barred debt.

### A. Violation of 15 U.S.C. §§ 1692e and 1692f for Threatening to Sue on a Time-Barred Debt

Plaintiff contends that ICS violated the FDCPA by threatening litigation on a time-barred debt.  She states that a cause of action for treble damages under California Civil Code § 1719 accrues not later than thirty days after a warning letter that meets the statutory prerequisites is sent without the check writer paying the charges demanded in the warning letter.  Because the last of the letters sent by CDC was dated October 2, 2002, plaintiff asserts that the right to sue for treble damages under § 1719 accrued on November 1, 2002.[5]  Plf.'s Mot. Summ. J. at 8.

California Civil Code § 1719 reads in relevant part:

> Notwithstanding any penal sanctions that may apply, any person who passes a check on insufficient funds shall be liable to the payee for damages equal to treble the amount of the check if a written demand for payment is mailed by certified mail to the person who had passed a check on insufficient funds and the written demand informs this person of (A) the provisions of this section, (B) the amount of the check, and (C) the amount of the service charge payable to the payee.

The parties dispute whether a claim for treble damages under § 1719 is subject to the one-year statute limitations set forth in California Code of Civil Procedure § 340(a) or the three-year statute of limitations set forth in California Code of Civil Procedure § 338(a).  Under § 340(a) a one-year statute of limitations applies to "[a]n action upon a statute for a penalty or forfeiture, if the action is given to an individual, or to an individual and the state, except if the statute imposing it prescribes a different limitation."  Under § 338(a), a three-year statute of limitations applies to "(a) [a]n action

---

[5] The court does not express an opinion as to the date the § 1719 claim accrued, rather adopts plaintiff's position for purposes of this motion.

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT—C-04-03237 RMW
MAG                                    4

upon a liability created by statute, other than a penalty or forfeiture."  Plaintiff argues that seeking treble damages under § 1719 constitutes "[a]n action upon a statute for a penalty or forfeiture"; defendant, on the other hand, argues that treble damages under § 1719 are not a penalty and therefore are subject to the three-year statute of limitations set forth in § 338(a).

As defendant correctly points out, this court previously concluded in a sister case to this one, *Palmer v. Stassinos*:

> By making mandatory what was once previously discretionary, the California Legislature indicated its intent to change the purpose of the statutory scheme from one that was exclusively penal in nature to one designed to fix damages available under the statute.

348 F. Supp. 2d 1070, 1081 (N.D. Cal. 2004) (Whyte, J.).  Although that decision was made in the context of determining whether the defendant was entitled to both treble damages and the prejudgment interest, the court's reasoning obtains here, as well.  The court concludes as it did in *Palmer v. Stassinos* that the treble damages that ICS sought to collect were not just a penalty but rather at least compensatory in part.  Treble damages are intended by the legislature to replace in part the right to collect interest charges and mailing costs.  Thus, ICS's attempt to collect treble damages under § 1719 was subject to the three-year statute of limitations under § 338(a).  *See id.* at 1083.

Accordingly, even assuming without deciding that the wording of its November 26, 2003 letter constituted a threat to litigate, the debt was not time-barred because the three-year statute of limitations would not have run until November 1, 2005.  The allegedly offending letter was sent in November 2003 and it is undisputed that plaintiff received no further communication regarding the debt until she contacted ICS in June 2004.  Thus, because ICS ceased its collection efforts on Palmer's debt within the statute of limitations, the court grants summary adjudication against plaintiff as to her claim that ICS violated the FDCPA by threatening to sue on a time-barred debt.[6]

---

[6] Because the court has determined that the debt was not time-barred, it need not consider ICS's further arguments that (1) there was no threat of litigation by ICS; (2) ICS was entitled to rely on CDC's representations as to the validity of the debt; (3) that ICS would have been permitted to file suit on a time-barred debt because in California the statute of limitations does not affect the substantive right; or (4) that the bona fide error defense applies to immunize ICS's actions.

### B.   Violation of 15 U.S.C. § 1692e(8) for Reporting a Disputed Debt

In its November 8, 2005 order, the court granted summary judgment in favor of plaintiff as to her claim that ICS was liable for failing to report a debt as disputed in violation of 15 U.S.C. § 1692e(8). It subsequently vacated that determination in an order dated February 17, 2006. Order Granting Def.'s Mot. for Reconsideration, Docket No. 140. In her present motion for summary judgment, which is based substantially on the same evidence submitted for her first motion for summary adjudication on this issue, plaintiff again seeks summary adjudication that defendant violated the FDCPA by its failure to communicate that the debt was disputed.

Section 1692(e)(8) requires debt collector who knows or should know that a given debt is disputed to disclose its disputed status. This section does not impose a writing requirement on consumers who wish to dispute a debt. *Brady v. Credit Recovery Co., Inc.,* 160 F.3d 64, 65 (1st Cir. 1998).

Plaintiff claims that she initially contacted ICS about the debt starting on June 30, 2004. In a declaration, plaintiff states that she called ICS "to challenge the additional charges that were placed on my account." Palmer Decl. ¶ 4. A paralegal for plaintiff's counsel's firm contacted ICS on July 21, 2004 asking to know the amount of debt owed by plaintiff and the breakdown of charges. Decl. of Tammy Gulla re: Cross-Mot. Summ. J. ¶¶ 2 & 3. It is undisputed that defendant reported the debt to the TransUnion and Experian credit reporting agencies beginning March 8, 2003. ICS Dep. at 43:6-22. Defendant also acknowledges that it updates its reports and transmits them to credit reporting agencies on a weekly basis. *Id.* at 84:24-85:5. ICS continued to report the debt as undisputed until August 21, 2004, three days after the computer record shows that it received Palmer's lawsuit. *Id.* at 74:16-75:13, 147:12-19 75:22-76:20. The ICS computer records do not show Palmer's debt as disputed until September 9, 2004. ICS Dep. at 90:16-19.

The question, then, is whether there is a triable issue of fact as to whether plaintiff disputed the debt. She states in her declaration that she told the ICS representative that she "would not pay the debt unless they could explain what all the additional charges were for, since [she] did not believe the additional charges were correct." Palmer Decl. ¶ 4. In opposition, defendant submits a declaration stating that Palmer did not dispute the fact that she owed the debt, rather "asked what the

1  additional client charges were" and "did not deny owing the money."[7]  Johnson Decl. ¶ 14.  The

2  declaration further states that "[i]f Palmer had also indicated that she did not believe the charges

3  were accurate or that they were disputed, the collector would have noted this in the collection

4  record."  *Id.*  It goes on to state:

> If Ms. Palmer had disputed the debt, or stated that she did not believe
> that the charges were correct, accurate or due, or made any other
> indication that the account was in any way disputed, I.C. System's
> employee was trained and required by I.C. System's policies and
> procedures to change the status of the account to reflect the dispute
> which would have in turn updated the credit reporting to indicate that
> the account was disputed.

9  *Id.* at 15.  Plaintiff contends that the declaration is contradictory to the following testimony from the

10 deposition of Sue Johnson on behalf of ICS in which Johnson stated, explaining a June 30, 2004

11 entry in Palmer's record:

> So on June 30, 3004, collector 205 telephoned the debtor, spoke to
> Ms. Palmer, noted that she wasn't going to pay this debt, she just didn't
> care, but she wanted to know additional charges.  And then it says
> there were checks declined.  Refused to pay.
>
> That indicates to me that she questioned the additional charges and the
> collector indicated to her that she had – this was a bad check submitted
> for collection and the additional charges were associated with that
> check, bad check.

17 ICS Dep. at 55:8-19.  The declaration and the deposition testimony are not necessarily contradictory

18 as both acknowledge that plaintiff questioned the additional charges and the deposition testimony

19 does not indicate that she disputed the validity or accuracy of the debt about which she called.

20     A dispute need not be in writing to be recognized as a disputed debt under the FDCPA,

21 however, here the undisputed facts do not establish that Palmer's July phone inquiry on July 30,

22 2004 about the basis for the additional charges was sufficient for ICS to determine that she disputed

23 the amount ICS sought.  At her deposition, plaintiff's testimony was, like her declaration, unclear as

---

[7] Plaintiff objects to statements in Johnson's declaration regarding the contents of the computer records of Palmer's file as inadmissible hearsay because, she contends, the records themselves are the best evidence.  Based on Johnson's testimony on behalf of ICS submitted by plaintiff, the court overrules this objection.  It is clear from the deposition that the computer record is a series of notations that would not be comprehensible without Johnson's explanations.  However, the court exercises care in considering Johnson's declaration and will not permit defendant to create issues of fact by submitting a later-dated declaration contradicting previous testimony.  *Radobenko v. Automated Equipment Corp.*, 520 F.2d 540, 543-44 (9th Cir. 1975).

to the contents of her inquiry. In response to a question as to why she called ICS in June 2004, she responded "Well, I wanted to find out what the additional charges were for. I was very confused about that." *See* Decl. of Andrew Steinheimer, Ex. A, Dep. of Suzanne Palmer at 35:16-36:6.[8] She states, "I called [ICS] because I needed to find out what [the collection letter] was regarding and what the additional charges were for." *See id.* at 36:17-25. This ambiguity about the content of plaintiff's inquiry precludes granting summary adjudication that defendant continued to report that a disputed debt was undisputed.

Defendant also seeks to establish the bona fide error defense with respect to any alleged failure to report plaintiff's debt as disputed. Here, the record before the court is contradictory. On the one hand, defendant submits a declaration that states "[t]he status codes for disputed accounts include DDL, DRS and DRP among others. I.C. System employees are required to change the status code for any account in which they receive a dispute, whether verbal or written." Johnson Decl. ¶ 8.[9] But Johnson's deposition on behalf of ICS also includes the following exchange:

> Q. What constitutes a dispute?
> A. That they don't think they owe it, it's not valid and not a valid debt.
> Q. And then if the client says "I don't think I should have to pay these additional charges," or "I don't think I owe these additional charges," is the collector supposed to continue to try to collect the full amount of the debt?"
> A. Yes.

ICS Dep. at 56:19-57:3. This exchange does not definitively establish whether ICS is changing the status of the records upon receipt of a verbal dispute. Thus, the court cannot determine that ICS is entitled to the bona fide error defense as a matter of law.

---

[8] The pages containing these excerpts of Palmer's deposition, pages 34-36, are not attached to the Steinheimer declaration. This quotation is taken from defendant's papers. Defendant's counsel should submit these pages of Palmer's declaration for the record.

[9] Plaintiff objects to statements in Johnson's declaration regarding training as inadmissible hearsay to the extent that Johnson is testifying regarding ICS's written policy and training materials. The court overrules this objection. Johnson stated that she has worked for ICS for 27 years as a data entry clerk, posting clerk, debtor correspondent, senior debtor correspondent, litigation specialist, litigation referral supervisor, corporate paralegal and legal affairs manager and that she is charged with ensuring compliance with state and federal statutes. Johnson Decl. ¶¶ 2 & 3. She is undoubtedly familiar with the policies and training materials at ICS and how they are implemented.

## III. ORDER

For the foregoing reasons, the court rules as follows:

1. The court grants defendant's motion for summary judgment that it is not liable under 15 U.S.C. §§ 1692e(2), (10) or 1692f(1) for threatening suit on a time-barred debt.
2. The court denies plaintiff's motion for summary judgment that defendant is liable under 15 U.S.C. § 1692e(8) for failing to timely report a disputed debt as disputed.

DATED: 6/6/07

*Ronald M. Whyte*
RONALD M. WHYTE
United States District Judge

**Notice of this document has been electronically sent to:**

**Counsel for Plaintiff(s):**

| | |
|---|---|
| Ronald Wilcox | ronaldwilcox@post.harvard.edu |
| O. Randolph Bragg | rand@horwitzlaw.com |
| Paul Arons | lopa@rockisland.com |

**Counsel for Defendant(s):**

| | |
|---|---|
| Andrew Steinheimer | asteinheimer@mpbf.com |
| Mark Ellis | mellis@mpbf.com |

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:**    6/7/07                              /s/ MAG
                                         **Chambers of Judge Whyte**